In re ANGEL ARROYO RIVERA, Respondent.

No. 55.  Argued May 4, 1944.—Decided June 12, 1944.

*Angel Arroyo Rivera, pro se,* and *Ricardo H. Blondet* for respondent. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for The People.

Mr. Justice Snyder delivered the opinion of the court.

Angel Arroyo Rivera was admitted to practice as an attorney at law in 1913 and as a notary public in 1918.[1] He is not serving as a notary at this time, as he delivered his protocols to the District Court of San Juan by order of that court on May 26, 1941.

As a result of a report of the district court to this court, we ordered the *Fiscal* of this court to conduct an investigation of the acts of the respondent as hereinafter described. After the said investigation, the *Fiscal,* pursuant to our order, instituted the present disbarment proceeding.

The charges against the respondent, which have been fully established, may be divided into two types of offenses. The first consists of repeated violations of his duty as a notary in the execution of notarial documents from 1925 to 1940. The evidence discloses that, except for one year, such episodes occurred every year during this period. The net result is that the authenticity of many public documents executed by and acknowledged before the respondent as a notary public might well have been drawn into question. His acts showed a persistent indifference and gross carelessness to his high duties in this respect.

In some instances he failed to affix his notarial seal; in others he failed to place on the deeds his "rúbrica" or "signo," or both. In some deeds the witnesses thereto were not named; in others the witnesses did not sign them. There were documents with discrepancies between the names of the

---

[1] From 1922 to 1924 he did not serve as a Notary because of his failure to post the required bond.

parties in the deeds and the signatures thereon. In two deeds the respondent declared therein that all present had signed, whereas in truth and in fact parties thereto signed by a witness but respondent failed so to state. In some deeds there were erasures and interlineations that were not mentioned at the foot of the documents as having been made with the express approval of the parties and with the signatures of the persons signing the instruments, as required by law. There were also a number of less serious irregularities, such as use of numbers to indicate amounts and the number of deeds, instead of spelling out these numbers; in one protocol the closing memorandum lacked the date; in another protocol it was stated that it contained 78 sheets, whereas it contained 76 and the sequence numbering of the deeds was incorrect.

Most of the above-recited defects have been corrected either before the district court or before the *Fiscal* of this court during the course of the two investigations in question. The respondent, although admitting the facts alleged in this first series of charges, alleges in substance (1) that we have no authority to disbar him for violations of law and failure to perform his duty as a notary, and (2) since the defects in the documents in question have been corrected, he should not be punished in any event.

As to our authority in the premises, there can be no question of the inherent power of this court to disbar or to take other appropriate disciplinary action against members of the bar of this court who commit serious breaches of their duty as a Notary. *In re Torregrosa,* 25 P.R.R. 593; *In re Figueroa Maestre,* 58 P.R.R. 488.

The respondent also sets up as a defense the fact that substantially all the irregularities involved herein have been corrected. That argument should be addressed to us, not as a complete defense, but in the hope of mitigation of punishment. For the reasons noted herein, we cannot grant

the respondent the leniency he requests. But we also make it clear that in any event subsequent correction of such irregularities can never serve the purpose of wiping out retroactively the offenses involved therein.

The second series of charges is even more serious. The respondent failed to affix on deeds executed before him the internal revenue stamps required by law as follows: in 1925, on twelve deeds, $16.25; in 1926, on six deeds, $6.25; in 1927, on twelve deeds, $14.25; in 1928, on nine deeds, $21; in 1929, on seven deeds, $8.25; in 1933, on eight deeds, $3; in 1934, on five deeds, $1.75; in 1935, on three deeds, $1.25; in 1936, on seven deeds, $7; in 1940, one deed, 50 cents. And in 1939 and 1940 the respondent failed to attach to three deeds the stamp issued by the Colegio de Abogados de Puerto Rico, as required by Act No. 170, Laws of Puerto Rico, 1939 (p. 862). Certain other irregularities in connection with stamps, although not satisfactorily explained by the respondent, we do not discuss as unnecessary for the disposition of this proceeding.

The defense of the respondent against this second series of charges is that all the internal revenue stamps involved were thereafter affixed to the documents in question after the investigations herein; that the law does not state when such stamps are to be affixed; and that the only penalty which should be imposed is an administrative fine or something of the sort, which conceivably might not even be imposed on him, inasmuch as a notary cannot be turned into a collector for the Treasury. He also alleges extreme poverty during the years he failed to affix the stamps in question.

None of these allegations has anything to do with our authority to discipline the respondent herein. We have pointed out that "the courts preserve the inherent power which they have had for centuries to disbar from practice such attorneys as by their acts have shown themselves to be

unworthy of the confidence reposed in them. . .".[2] And this court has already held "In . . . the cases of *In re Rey González*, 56 *D.P.R.* 936; *In re Más*, 56 *D.P.R.* 940, and *In re Rivera*, 56 *D.P.R.* 942 . . . that the fact that a notary does not paste and cancel the internal revenue stamps on the public deeds which he executes constitutes sufficient cause to separate him from the profession of attorney-notary. . .". (*In re Figueroa Maestre, supra*, at p. 494).

By alleging his insolvency during the years in question, the respondent by inference admits that he collected the money from his clients for the aforesaid stamps and used it for personal purposes. However, even if he did not, his conduct is still inexcusable. And the fact that, after the investigations herein had been undertaken, the respondent was able to borrow sufficient money to buy and to affix all the stamps does not in any way exculpate the professional misconduct charged herein. For us to so hold would be to make a mockery of the laws involved and of the duties of the members of our bar.

The respondent was once a district judge. He is an attorney of many years' standing. His offenses were not isolated, but were repeated a number of times over a period of years. He took no action to correct any of his misdeeds until investigation thereof had been concluded by the district court. We are forced to conclude that the respondent knowingly and persistently conducted himself in a manner which makes it impossible for us to find that we can continue to trust him to conform to the high standards of professional conduct required by this court of the members of its bar.

For the reasons stated herein, an order will be entered disbarring the respondent as an attorney at law and notary public.

---

[2] *In re Tormes*, 30 P.R.R. 248, 249.